UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **NExTT SOLUTIONS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:13 CV 1030 |
| ) | |
| **XOS TECHNOLOGIES, INC., d/b/a** ) | |
| **XOS DIGITAL; and STRATBRIDGE,** ) | |
| **LLC;** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION and ORDER

I.   BACKGROUND

Plaintiff NExTT Solutions, LLC, is an Indiana sports software company that markets its products towards high-profile customers like the National Football League ("NFL") and college sports programs. In 2007, NExTT began discussing a possible business relationship with defendant Stratbridge, LLC, a Delaware software company with its principal place of business in Massachusetts. On May 29, 2009, the parties entered into a licensing agreement ("the Contract"), under which Stratbridge was permitted to use NExTT's NFL scouting program in developing and marketing its own products to the NFL. In July of 2012, Stratbridge sold its rights and obligations under the Contract to another defendant, XOS Technologies, Inc., a Delaware company with its principal place of business in Florida.

NExTT has sued both Stratbridge and XOS for breach of contract, breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, and

fraudulent inducement. (DE # 1.) NExTT also seeks a declaratory judgment and an accounting. (*Id.*) NExTT alleges that Stratbridge breached the contract by charging NFL teams more than it should have, failing to make reasonable efforts to grow the scouting program business, and mismanaging its contractual obligations to pursue opportunities for royalty-bearing products. NExTT further alleges that Stratbridge ignored its obligations under the Contract and instead used NExTT's relationships with NFL teams to market its own products.

Defendants Stratbridge and XOS moved to dismiss for lack of personal jurisdiction under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) and, in the alternative, for failure to state a claim under RULE 12(b)(6). (DE # 9.) NExTT opposed the motion to dismiss and requested jurisdictional discovery. (DE # 12.) On May 14, 2014, this court denied the motion to dismiss in part, holding that the court could properly exercise specific personal jurisdiction over Stratbridge. (DE # 28.) The court also held that it could not exercise specific jurisdiction over XOS, but that NExTT had made a colorable showing of *general* jurisdiction with regard to that defendant. (*Id.*) Accordingly the court withheld ruling on the motion to dismiss as to XOS and permitted plaintiff a chance to conduct jurisdictional discovery. (*Id.*) The jurisdictional discovery period has ended, and the parties have submitted supplemental briefs and evidence in accordance with this court's scheduling order. The motion to dismiss, as it pertains to this court's general jurisdiction over XOS, is now ripe for ruling.

## II. LEGAL STANDARD

Though XOS has moved to dismiss pursuant to both RULES 12(b)(2) and 12(b)(6), only the former need be discussed in the present order. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. After a defendant moves to dismiss under RULE 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction. *Id.* The court must resolve factual disputes in the plaintiff's favor when evaluating whether that showing has been made. *Id.*

## III. DISCUSSION

A federal court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case, such as this one, when the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located—here, Indiana. FED. R. CIV. P. 4(k)(1)(A). Indiana law permits its courts to exercise jurisdiction on any basis permitted by the Constitution of the United States. IND. TR. R. 4.4(A). Thus, the statutory question merges with the constitutional one; if Indiana constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due process clause, which "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464, 471-72 (1985) (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945)). "The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010). These two types of jurisdiction – general and specific – require separate examination.

### A.　**Specific Jurisdiction**

At the end of its supplemental brief, NExTT asks the court to reconsider its holding that this court cannot exercise specific personal jurisdiction over XOS. (DE # 36 at 16.) Specific jurisdiction depends on contacts that demonstrate a real relationship between the defendant and the forum state *with respect to the transaction at issue*. *Purdue,* 338 F.3d at 780. NExTT argues that XOS could have reasonably predicted that it would be answerable in a court situated in Indiana by pointing to the fact that XOS assumed all of Stratbridge's obligations under the Contract, knew that NExTT was an Indiana company, and still owes several payments to NExTT.

As the court already explained in its prior order, the fact that XOS assumed Stratbridge's obligations under the Contract is not dispositive. The Seventh Circuit distinguishes between a corporate successor, which has "chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor," and an assignee, who has purchased certain specific contractual rights and assumes certain specific obligations. *Purdue,* 338 F.3d at 784. While the former effectively absorbs the jurisdictional contacts of its predecessor, the latter does not, and specific jurisdiction exists only if, after the purchase of the assets, the assignee "so structured its business affairs that it reasonably could have predicted that it would be answerable in a court situated in Indiana for its actions with respect to these transactions." *Id.* at 785.

In this case, it was – and still is – undisputed that XOS had no part in the Contract's negotiation or execution. Further, it remains undisputed that XOS acquired the Contract from Stratbridge without purchasing all of or subsuming Stratbridge itself, and that XOS and Stratbridge remained separate and distinct entities after the sale. Accordingly, XOS does not "stand in the shoes" of Stratbridge for purposes of establishing specific jurisdiction. NExTT's remaining evidence – that XOS knew that NExTT was an Indiana company and still owes payments to NExTT – do not convince the court that NExTT "structured its business affairs" such that it could have predicted that it would be answerable in an Indiana court for its actions with respect to the Contract. As the court already explained in its prior order, these facts are not sufficient

to establish specific jurisdiction. *See, e.g., Purdue,* 338 F.3d at 781 (contracting with an Indiana resident does not establish sufficient minimum contacts in Indiana); *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.,* 18 F.3d 389, 395 (7th Cir. 1994) (mailing of payments into the forum state is insufficient basis for specific jurisdiction). In sum, as explained in the court's prior order, and now rearticulated here, this court lacks specific jurisdiction over XOS.[1]

### B. General Jurisdiction

Unlike specific jurisdiction (which focuses on a defendant's connections to a forum state with respect to the transaction at issue), general jurisdiction permits a defendant to be sued in the forum regardless of the subject matter of the litigation. *Purdue,* 338 F.3d at 787. "[T]he constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Id.* (quoting *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir. 2001)). "General jurisdiction is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia,*

---

[1] The parties have demonstrated that they intend to vigorously litigate the issues in this case, including by asking the court to reconsider its prior orders. However, the parties are advised that the court does not intend to revisit every ruling it makes in this case. "It is well established that a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where *significant* new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini,* 724 F.3d 965, 967 n.1 (2013) (emphasis added). Future requests which do not meet these criteria will not be entertained.

*S.A. v. Hall,* 466 U.S. 408, 416 (1984)). Such contacts must be so extensive as to be tantamount to the defendant being constructively present in the forum to such a degree that it would be "fundamentally fair to require it to answer in [that forum] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.* (emphasis in original). The general jurisdiction standard is rigorous because "the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID,* 623 F.3d at 426.

In 2011, the Supreme Court of the United States clarified that general jurisdiction cannot be premised solely upon "continuous and systematic" contacts with a forum state; instead, general jurisdiction exists "when [defendants'] affiliations with the State are so 'continuous and systematic' as to render them *essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011) (emphasis added). In January of 2014, the Supreme Court solidified its adherence to this new "at home" standard, holding that an argument that general jurisdiction was appropriate over any corporation that engages in substantial, continuous, and systematic business in a foreign state was "unacceptably grasping." *Daimler AG v. Bauman,* 134 S. Ct. 746, 760-61 (2014). The *Daimler* court reiterated the "at home" standard and stated that the affiliation between the defendant and the forum state must be so continuous and systematic that the defendant is "comparable to a domestic

7

enterprise in that State." *Daimler,* 134 S. Ct. at 758 n. 11. Both *Daimler* and *Goodyear* emphasized that the paradigm forum for the exercise of general jurisdiction is the defendant's domicile (which, in the case of a corporation, is the place of incorporation and principal place of business). *Goodyear,* 131 S. Ct. 2853; *Daimler,* 134 S. Ct. at 735. The Supreme Court did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business. However, the court stated that a defendant might be subjected to general jurisdiction in some other forum only in an "exceptional case." *Daimler,* 134 S. Ct. at 761.

After *Goodyear* was decided in 2011, courts in this circuit have rarely found general jurisdiction to exist. Perhaps tellingly, NExTT fails to cite any post-*Goodyear* cases in its argument that general jurisdiction over XOS is appropriate. Nor was the court able to locate many cases that could support its position. Perhaps one notable exception is *J.B. v. Abbott Laboratories, Inc.,* No. 12-cv-385, 2013 WL 452807, at *2-3 (N.D. Ill. Feb. 6, 2013), a case from the Northern District of Illinois where the district court found (like many district courts dealing with pharmaceutical company defendants in the past) that soliciting business, selling and marketing products, and employing a sales team in Illinois justified general jurisdiction over the pharmaceutical giant. The *Abbott* court considered the defendant's argument that *Goodyear* created a new standard to be a "narrow reading" of *Goodyear. Id.* at *2. The *Abbott* court reasoned that *International Shoe's* "continuous and systematic" standard was still good law that remained essentially unchanged by *Goodyear*, with *Goodyear* simply providing additional possible

grounds for finding jurisdiction. *Id.* Of course, *Abbott* was decided after *Goodyear* but before *Daimler*; if any doubts remained about *Goodyear's* "at home" requirement, those doubts were resolved when *Daimler* reiterated the standard in no uncertain terms. In any event, this court is not bound by *Abbott's* reasoning.

It is easier to locate examples of post-*Goodyear* cases finding the absence of general jurisdiction. For example, in *Abelesz v. OTP Bank,* 692 F.3d 638, 656 (7th Cir. 2012), the Seventh Circuit considered a plaintiff's argument that two foreign defendants should be subjected to general jurisdiction in the United States. The first defendant had almost 5,000 accounts where the account holders had U.S. mailing addresses, and those accounts were worth over $93 million. The second defendant had about 1,500 accounts of that type, worth around $147 million. Both defendants had banking and contractual relationships with U.S. banks and companies, with some of the contracts containing forum-selection clauses designating U.S. fora as the place for dispute resolution, and traveled to, advertised in, and targeted customers in the U.S. Despite these contacts, the *Abelesz* court found that general jurisdiction did not exist. The court emphasized that "the proper inquiry is not, as plaintiffs suggest, whether a defendant's contacts 'in the aggregate are extensive.'" *Id.* at 656. Rather, the court reasoned, the question was "whether the contacts 'are so "continous and systematic" as to render [defendants] essentially at home in the forum.'" *Id.* (quoting *Goodyear,* 131 S. Ct. at 2851, alterations in *Abelesz*). The court considered the fact that the defendants' U.S. accounts amounted to 0.17 and 0.4 percent of their total accounts, respectively, as persuasive in finding that no

general jurisdiction existed. The court also found indications in the record that the defendants were not "at home" in the U.S., such as the forum-selection clauses that appeared in some contracts (after all, such a clause would not be necessary if the defendants were already subject to jurisdiction in the U.S.), and correspondent banking relationships (accounts used by foreign banks to offer services to their customers in places where the banks have no physical presence). At the end of its analysis, the Seventh Circuit concluded that the defendants' contacts fell "well short" of the "stringent 'essentially at home' standard." *Id.* at 659.

Even pre-*Goodyear*, when an arguably more lenient and plaintiff-friendly standard prevailed, the Seventh Circuit held in *uBid v. GoDaddy Group Inc.* that millions of dollars in revenue, an extensive customer base, and widespread marketing and targeting of potential customers did not suffice to establish general jurisdiction. 623 F.3d at 426. In *uBid,* the defendant GoDaddy engaged in "extensive and deliberate" contacts with Illinois by marketing and selling domain names. *uBid,* 623 F.3d at 426. GoDaddy, which was headquartered in Arizona, put up billboards at various Chicago-area stadiums, engaged in national advertising, and had a significant online presence; these efforts resulted in "hundreds of thousands" of Illinois customers, and "many millions of dollars in revenue" to the defendant in a single year. *Id.* at 424. Nevertheless, the Seventh Circuit held that the district court lacked general personal jurisdiction over the defendant. *Id.* at 426. The court reasoned:

> It would be unfair to require GoDaddy to answer in Illinois for any conceivable claim that any conceivable plaintiff might have against it.

10

> Imagine an Illinois visitor to GoDaddy's headquarters in Arizona who slipped, fell, and then sued for the injury, or a GoDaddy employee who worked in Arizona, was fired, moved to Illinois, and then sued for wrongful termination. There is no reason for GoDaddy to expect, as it goes about its business of selling domain names in Illinois, that it is thereby exposing itself to such lawsuits in Illinois. The district court correctly found that GoDaddy is not subject to general jurisdiction in Illinois.

*Id.* at 426 (citations omitted).

With this precedent in mind, the court considers plaintiff's contention that this court may properly assert general jurisdiction over XOS. NExTT's primary argument is that XOS has maintained a nearly decade-long continuous relationship with five customers in Indiana: the University of Notre Dame, Indiana University, Purdue University, the Indianapolis Colts, and the Indiana Pacers. (DE # 36 at 4.) In the case of Notre Dame, NExTT contends that the relationship extends back thirteen years. (*Id.* at 6.) NExTT also contends that XOS has pursued (and in some cases succeeded in creating) business relationships with at least 15 other Indiana customers, mostly universities. (*Id.* at 7, 15.) Perhaps most noteworthy are XOS's five-year business relationships with Ball State and Indiana State University, a relationship with the University of Indianapolis spanning two years, a project for the NCAA which was completed in 2012, and the fact that XOS hosts an annual webcast for the College Football Hall of Fame in South Bend. (*Id.* at 8.)

NExTT contends that, over the last five years, XOS has earned a substantial amount of revenue from Indiana customers. (DE # 36 a 8.) A chart showing XOS's revenue stream broken down by state for the past five years shows that XOS made

approximately $1.2 million from Indiana sources in 2009; almost $1.8 million in each of the years 2010 and 2011; $1.4 million in 2012; $660,000 in 2013; and $304,000 so far in 2014. (DE # 33-10 at 2.) Over those five years, XOS generated a total of $7,136,963 from its Indiana customers. (*Id.* at 9.) XOS did business with 48-49 states per year, and in 2009, Indiana was the 4th greatest source of revenue out of those 48-49 total states. (*Id.* at 9.) In 2010, Indiana placed 3rd; in 2011, 4th; in 2012, 6th; and in 2013, 9th. (*Id.* in 10.) XOS's CEO testified that its Indiana revenue comprises approximately 5% of its total revenue, though NExTT questions the veracity of this figure.[2] (*Id.* at 9-10.)

NExTT also points out that XOS routinely and frequently sends support staff into Indiana—about 25 individuals total, who visited Indiana on 319 days of the five-year period spanning 2009-2014. (*Id.* at 12.) Additionally, XOS has had at least four different

---

[2] NExTT takes issue with the fact that XOS's CEO could not answer its questions to NExTT's satisfaction. (DE # 36 at 9-10 & n.3.) Accordingly, NExTT argues, it should be entitled to additional discovery on the topics on which XOS's CEO gave insufficient testimony. The request is denied. As the parties undoubtedly have been well aware since the question of jurisdiction was raised one year ago, it is NExTT's burden to prove that this court has personal jurisdiction over XOS in this case. NExTT was permitted a sufficient period of time to conduct jurisdictional discovery, including deposing whichever individuals it decided were necessary to obtain the information it sought. The fact that NExTT did not obtain the information it wanted from the individuals it chose to depose does not justify further delaying this case for additional jurisdictional discovery. Further, NExTT's approach of failing to raise the issue of extending jurisdictional discovery until well after the close of that discovery period is not well taken by the court. Finally, the piecemeal approach suggested by NExTT (for the court to expend its time and resources considering the present motion, unless it decides to find for XOS, in which case it should permit NExTT additional time to come up with more information and present additional arguments) would not only permit NExTT two bites of the proverbial apple, but would also create numerous inefficiencies for XOS, this case's schedule, and this court.

sales people covering Indiana over the last five years and sent five to six employees to the NFL Combine each year. (*Id.*) Further, NExTT contends that XOS has made hundreds of thousands of payments to vendors affiliated with its business endeavors in Indiana and ships an unknown (presumably substantial) number of products into Indiana in connection with its contracts with customers. (*Id.* at 9, 14.) Next emphasizes that, in 2006, XOS purchased the assets of Sagio Software, which was based in South Bend, Indiana. XOS then leased office space in South Bend for three years, from 2006 to 2009. (*Id.* at 13.) This office housed one employee, who after 2009 worked from his home until he left the company in 2010. (*Id*. at 13.)

  Finally, NExTT submits that XOS registered with the Indiana Secretary of State as a foreign corporation, receiving a certificate of authority to conduct business in Indiana in June of 2007. (DE ## 33-13, 33-14.) Based on the undisputed information provided by NExTT purporting to be a screenshot of XOS's information page from the Secretary's website, XOS first filed for a certificate of authority with the Secretary on June 5, 2007. (DE # 33-13 at 2.) However, the Secretary's website also states that XOS's certificate was "revoked" on December 27, 2010, and that it has been considered "inactive" since then, though it is not clear who revoked the certificate (XOS or the State) or for what reason. On January 25, 2013, XOS provided the Secretary with a notice of change of registered agent. (*Id.*) Notably, the document also reveals that XOS

was incorporated in Delaware (DE # 33-14 at 6) and that XOS's office is located in Sanford, Florida. (DE # 33-13 at 2.)[3]

The evidence submitted by NExTT in response to XOS's motion to dismiss clearly establishes that XOS conducts business in Indiana, and XOS does not dispute this proposition. Even though it has only a handful of consistent Indiana customers, XOS has done business with those customers for, arguably, a decade or more. Over the years, it has sometimes earned over $1 million (sometimes closer to $2 million) from its Indiana customers in a one-year period. Further, it has employees physically present in Indiana for a few months each year and has, in the past, been registered as a foreign corporation doing business in the state. Of course, the quantity of customers and amount of revenue enjoyed by XOS does not approach the extensive relationships and multi-million dollar figures considered in cases like *Abelesz* and *uBid* (where, as explained above, the Seventh Circuit found the defendants' contacts with the forum states to be inadquate). But even XOS's relatively modest earnings with its smaller pool of customers, along with the other facts apparent from the record, could demonstrate

---

[3] NExTT also moves to supplement the supplemental brief it filed in opposition to XOS's motion to dismiss. (DE # 39.) The motion is granted, though it helps NExTT very little. The additional evidence NExTT submits consists of a "tweet" issued by Purdue University's football team on the social media website, Twitter, in which the team indicates its excitement about new computers it received from XOS, and several screenshots of XOS's website wherein an Indiana team is mentioned, shown, or provides a testimonial. These submissions do not add much to the evidence already submitted by NExTT (that is, evidence demonstrating the generally uncontested fact that XOS has a handful of valuable, long-term Indiana customers). Nonetheless, the court has considered NExTT's submissions.

14

that XOS conducts "continuous and systematic" business in Indiana. This is actually what NExTT argues in its briefing, and to this extent, NExTT may be correct. But after *Goodyear* and *Daimler*, "continuous and systematic" contacts with a forum state are no longer sufficient to establish general jurisdiction. XOS's contacts with Indiana must be so continuous and systematic that XOS can be said to be "at home" in Indiana. This, NExTT has not proven.

The extent of XOS's contacts with Indiana are only part of the equation. As *Daimler* instructs, the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. *Daimler,* 134 S. Ct. at 762. "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* In this case, XOS appears to have stronger affiliations with other states, namely Florida, where all of its officers reside, where its office is located, and from where, over the last five years, it derived more revenue ($8.6 million total between 2009 and 2014) than it did from Indiana ($7.1 million for the same time period). (DE ## 33-13, 33-14, 33-10 at 10.) Delaware, where XOS is incorporated, is also a contender. *See Goodyear,* 131 S. Ct. 2853; *Daimler,* 134 S. Ct. at 735 (place of incorporation and principal place of business are paradigm fora in which general jurisdiction over a corporation is appropriate).

Further, when the totality of XOS's contacts with Indiana are considered over the past five years or more, it becomes clear that XOS's connections to Indiana are on the

decline. XOS's revenue from Indiana sources has decreased over time, with XOS making approximately $662,000 in 2013, compared to the $1.2 million it made in 2009 and the $1.8 million it made in each of 2010 and 2011. At one point XOS had one Indiana employee, whom XOS acquired as part of its purchase of Sagio, and maintained an office for that employee in South Bend, Indiana; however, the lease was discontinued in 2009, and the employee has not worked for XOS since 2010. XOS's status with the Indiana Secretary of State is now listed as "inactive." In short, if XOS ever had a commercial hayday in Indiana that might have justified the exercise of general jurisdiction over it, that hayday is no longer.

Having considered the totality of the evidence submitted by NExTT, the court finds that NExTT has failed to make a prima facie showing that general jurisdiction can be asserted over XOS in this district under the "at home" standard articulated by *Goodyear* and *Daimler*. If general jurisdiction could not be asserted over the defendants in *Abelesz* and *uBid*, it certainly is not appropriate here. Further, if a visitor who slipped and fell on the floor of XOS's Florida office was permitted to sue XOS in Indiana based on the Indiana contacts apparent from the record in this case, the "at home" requirement set forth by *Goodyear* and *Daimler* would be virtually meaningless. *See uBid*, 623 F.3d at 426. There was no reason for XOS to expect, as it went about its business of selling software and services in Indiana (and in 47 or more states around the country), that it would be exposing itself to such lawsuits in Indiana. *See id.* Accordingly, the

court cannot exercise general jurisdiction over XOS, and NExTT's claims against XOS must be dismissed.

IV. CONCLUSION

For the reasons set forth above and in the court's prior order (DE # 28), the court **GRANTS** defendants' motion to dismiss for lack of personal jurisdiction (DE # 9) as to defendant XOS Technologies, Inc. d/b/a XOS digital, and **DENIES** the motion as to defendant Stratbridge, LLC. Plaintiff's motion to supplement its motion to dismiss is **GRANTED.** (DE # 39.)

                                        **SO ORDERED.**
Date: November 25, 2014

                                      s/James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT